DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, and THE PEOPLE OF THE VIRGIN ISLANDS, | ) ) ) ) | |
| Plaintiff, | ) ) | Criminal No. 2009-20 |
| v. | ) ) ) | |
| GELEAN MARK, a/k/a "KERWIN", and JEROME BLYDEN, | ) ) ) ) | |
| Defendants. | ) ) | |

ATTORNEYS:

**Kim R. Lindquist, AUSA**
**Nolan D. Paige, AUSA**
St. Thomas, U.S.V.I.
     *For the plaintiffs.*

**Mark D. Hodge, Esq.**
St. Thomas, U.S.V.I.
     *For the defendant Gelean Mark.*

**Treston E. Moore, Esq.**
St. Thomas, U.S.V.I.
     *For the defendant Jerome Blyden.*


**MEMORANDUM OPINION**


     This opinion memorializes the Court's October 7, 2010 ruling on the motions by the defendants Gelean Mark ("Mark") and Jerome Blyden ("Blyden") for judgments of acquittal and a new trial[1] in this matter.

_____

     [1] A separate opinion will memorialize the Court's ruling on the defendants' motion for a new trial based on the government's failure to disclose claimed Jencks and *Brady/Giglio* materials.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 2

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On May 19, 2009, a grand jury handed down an indictment in the instant case against Mark and Blyden.  On October 1, 2009, a grand jury handed down a superseding indictment.  Count One charged Mark and Blyden, with participating in or operating a racketeering enterprise involving narcotic sales, illegal gambling, and violent acts including attempted murder, in violation of 18 U.S.C. § 1961 et seq.  Count Two charged Mark and Blyden with the attempted murder of Trevor Nicholas Friday Jr. ("Friday") in aid of racketeering, in violation of 18 U.S.C. § 1959.  Count Three charged Mark and Blyden with the assault with a dangerous weapon of Friday in aid of racketeering activity, in violation of 18 U.S.C. § 1959.  Count Four charged Blyden with the assault with a dangerous weapon of Damien Daniels in aid of racketeering, in violation of 18 U.S.C. § 1959.  Count Five charged Mark and Blyden with using a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924.  Counts Six and Seven charged Blyden with money laundering, in violation of 18 U.S.C. § 1956,  and bank fraud, in violation of 18 U.S.C. § 1344.[2]

A trial in this matter was held from May 3, 2010 to May 8,

_____

[2] On the morning of trial, the government moved for dismissal of Counts Six and Seven. The Court granted that motion.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 3

2010.  The government presented taped phone conversations between Mark and another member of the drug conspiracy, Vernon Fagan, about drug trafficking and dogfighting activity, and conversations between other drug dealers which discussed Mark's distribution network in the Virgin Islands.  Three of the government's witnesses,  Glenson Isaac ("Isaac"), James Springette ("Springette"), Elton Turnbull ("Turnbull"), testified that they were engaged in drug trafficking activity with Mark.

Friday, who had distributed drugs in Smith Bay at the time the Mark-Blyden enterprise was distributing cocaine and cociane base on St. Thomas, also offered testimony.  He testified that both of the defendants shot at him, and he was subsequently taken to the hospital for gunshot wounds.

At the close of the government's case, Blyden moved for a judgment of acquittal on Count Four pursuant to Federal Rule of Criminal Procedure 29.  Finding the evidence insufficient to support a conviction of Blyden on that Count, the Court granted Blyden's Rule 29 motion with respect to Count Four.

Mark called Marjorie L. Williamson, office manager and veterinary technician for the Animal Hospital in St. Thomas.  She testified briefly that she possessed records for about 40 animals belonging to Mark that had received treatment at the Animal Hospital.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 4

Blyden took the stand and testified in his own defense.  He testified that on the date of the shooting of Friday he was taking care of his daughter who was ill.  He stated that he drove to get medicine and then stopped at the Hi Ho grocery store. While there he testified that a man with a mask on his face began shooting.  He stated that he heard shots fired and took cover by a phone booth.  When the sounds of firing ceased, he testified he returned to his car and drove off.

Blyden further testified that he had no involvement in dogfighting.  Additionally, he stated that he was not involved in, nor had any awareness of, the importation and distribution of drugs by Mark prior to the filing of charges in this case.

On May 7, 2010, the jury sent the Court a note that they had reached a unanimous verdict. The foreperson then read the jury's verdict in court.  Following a request by Blyden for a poll of the jury, one juror when asked if the verdict was his unanimous verdict, responded "Yes and no." (Trial Tr. at 251, May 7, 2010.) Finding that the juror's response indicated a lack of unanimity, the Court then gave the jury an instruction about returning to deliberation after polling.

Following further deliberation, the jury returned a verdict on May 8, 2010.  It found Mark guilty on Counts One and Three and not guilty on Counts Two and Five.  It found Blyden guilty on

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 5

Count Three and not guilty on Counts One, Two, and Five.

## II. <u>DISCUSSION</u>

**A. Rule 29**

A judgment of acquittal is appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'")(quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

An insufficiency finding should be "'confined to cases where the prosecution's failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984) ("Our task is not to

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 6

decide what we would conclude had we been the finders of fact; instead, we are limited to determining whether the conclusion chosen by the factfinders was permissible.").

Further, the government may sustain its burden entirely through circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988).

**B. Rule 33**

When deciding a Rule 33 motion for a new trial, the Court is provided somewhat more discretion than what is afforded under Rule 29.  Under Rule 33, the Court may grant a new trial "in the interest of justice." *United States v. Charles*, 949 F. Supp. 365, 368, 35 V.I. 306 (D.V.I. 1996).  In assessing such "interest", the court may weigh the evidence and credibility of witnesses. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990).  If the Court determines that there has been a miscarriage of justice, the court may order a new trial. *Id.*  "The burden is on the defendant to show that a new trial ought to be granted. Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Clovis*, Crim. No. 94-11, 1996 U.S. Dist. LEXIS 20808, at *5 (D.V.I. Feb. 12, 1996).

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 7

### III. <u>ANALYSIS</u>

**A. Rule 29**

**1. Mark's Rule 29 Motion**

In his Rule 29 motion, Mark asserts both technical challenges as well as challenges to the sufficiency of the evidence.  The Court will first dispose of his technical challenges, and then turn to the more traditional Rule 29 issues related to sufficiency of the evidence.

**a. Technical challenges**

**i. Verdict Form**

Mark challenges his conviction on Count One because of the presentation of racketeering acts three and four in the verdict form.

The Indictment charged that:

a. Beginning from a time unknown, but no later than 1999, and continuing until October 2005, in the District of the Virgin Islands and elsewhere, GELEAN MARK did knowingly and intentionally, combine, conspire, confederate, and agree together with others known and unknown to the grand jury, to violate Title 21, United States Code sections 952(a) and 960(b)(1)(B)(ii), that is, to import narcotics into the United States from a place outside thereof, namely, five (5) kilograms or more of a mixture or substance containing detectable amounts of cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 963.

b.  Beginning from a time unknown, but no later than 1999, and continuing until October 2005, in the

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 8

> District of the Virgin Islands and elsewhere GELEAN
> MARK did knowingly and intentionally, combine,
> conspire, confederate, and agree together with others
> known and unknown to the grand jury, to violate Title
> 21, United States Code, Sections 841(a)(1) and
> 841(b)(1)(A)(ii), that is, to knowingly and
> intentionally possess with intent to distribute
> narcotics, namely five (5) kilograms or more of a
> mixture or substance containing detectable amounts of
> cocaine, a Schedule II controlled substance, in
> violation of Title 21, United States Code, Section
> 846.

(Mark & Blyden Superseding Indictment.)  However, the verdict

form incorrectly listed racketeering act four as a conspiracy

to import cocaine and cocaine base when the act should have

been properly listed as a conspiracy to possess with intent to

distribute cocaine and cocaine base.  Mark's challenge fails

for several reasons.

In *Government of the Virgin Islands v. Bedford*, 671 F.2d

758, 762 (3d Cir. 1982), the Court of Appeals for the Third

Circuit addressed an error in the verdict form.  There, the

verdict form listed as the charged count, possession of a

dangerous weapon, instead of unauthorized possession of a

firearm during a crime of violence.  The Third Circuit rejected

the defendant's contention that he was convicted of an offense

for which he was not charged.  The Third Circuit deemed the

"error in the verdict form . . . merely clerical," and found,

based on the record, that the error was harmless.

Given that act four as listed on the verdict form

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 9

overlapped with the offense listed in act three, the Court

found it appropriate to strike racketeering act four.  That

action in no way affected the jury's conviction of Mark on the

underlying RICO offense.  Indeed, the jury found that the

pattern of racketeering activity included racketeering acts

three[3] and six[4].

### ii. Legal Viability of Racketeering Act Six-Violation of 19 V.I.C. § 2613a(a)(1)

Mark resurrects his argument advanced at trial that V.I.

Code Ann. tit. 19 § 2613a(a)(1)("section 2613") does not

constitute a "racketeering activity" as contemplated by Title

18, United States Code, Section 1961(1) ("Section 1961(1)").

Section 1961(1) defines a racketeering activity as "any act or

threat involving murder kidnapping, gambling . . . which is

chargeable under State law and punishable by imprisonment for

more than one year."  18 U.S.C. § 1961(1).  Section 2163

provides in pertinent part that "[w]hoever willfully, or for

any bet, stake, or reward, instigates or encourages any dog to

attack, bite, wound, or bait another dog, except in the course

of protection of life or property . . . shall be guilty of a

---

[3] Racketeering act three was the conspiracy beginning no later than November 2004 and continuing until October 2005 to import cocaine.

[4] Racketeering act six was for bet encouraging dogs to attack, bite and wound other dogs.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 10

felony punishable by imprisonment for not more than two (2)

years and fined not less than two thousand dollars ($2,000) nor

more than four thousand dollars ($4,000.)" 19 V.I.C. §

2613a(a).

The Indictment charges that Mark and Blyden "for bet,

encouraged dogs to attack, bite, and wound other dogs, in

circumstances not in the course of protection of life or

property . . . ." (Superseding Indictment.)  That language

tracks the language of Section 2613.  Mark argues that the

statute criminalizes "willfully, or for any bet, stake or

reward" encouraging a dog to fight another dog.  Mark asserts

that the statute targets willful conduct and that "the

inclusion of a phrase such as 'bet, stake, or reward' as part

of completely superfluous language in a State or Territorial

statute cannot" elevate an act to a "racketeering act." (Def.'s

Mot. for J. of Acquit. 5.)

The reading Mark urges runs contrary to the Court's "task

. . . to give effect to all parts of the [statute], without

trampling on the plain meaning of the words." *Sekula v. FDIC*,

39 F.3d 448, 454 (3d Cir. 1994); *see also DIRECTV, Inc. v.

Pepe*, 431 F.3d 162, 168 (3d Cir. 2005)("[W]e must, whenever

possible, read the statute in such a manner as to give effect

to every part of it." ).  The Court thus must give effect to

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 11

Section 2613's prohibition on gambling.  In so doing, a violation of that section constitutes a racketeering act under section 1961(1).

### iii. Specialty of Act Six

Mark further asserts that racketeering act six should be dismissed because the jury instructions and verdict form did not specify the date and location where such dogfighting for bet occurred[5].

The Indictment charged that "[f]rom 1999, through October 2005, both dates being approximate and inclusive, in the District Court of the Virgin Islands GELEAN MARK and JEROME BLYDEN, for bet, encouraged dogs to attack, bite, and wound other dogs . . . ." (Superseding Indictment.)  The jury was provided with a copy of the Indictment with the relevant dates. Moreover, the instructions for Count One reference the government's burden in connection with the "crime as charged in Count One of the Indictment." (Jury Charge at 14.)  Juries are presumed to follow instructions given by the Court. *United*

---

[5]Mark also challenges the jury instructions and verdict form's characterization of the dogfighting for bet offense using the plural dogs.  He notes that in the statute, the offense is phrased as involving a singular dog. Mark is correct that the statute punishes anyone who "willfully, or for any bet, stake, or reward, instigates or encourages any dog to attack, bite, wound or bait another dog." 19 V.I.C. 2613a(a)(1).  Given that encouraging more than one dog to attack bite or wound another dog, necessarily involves the commission of such offense with one dog, the Court finds no possible prejudice with the references to the offense using the plural "dogs."

*States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003).  The Court
found no error with a failure to include the alleged dates in
its instructions or verdict form.

### b. Sufficiency of the Evidence

#### i. Count One

##### a) Relatedness

Mark further argues that the dogfighting act should be
dismissed because there was no shared or analogous purpose
between the dogfighting act and the other charged acts.  The
relatedness prong "focuses on the *inter-relationship* of charged
RICO predicates." *United States v. Eufrasio*, 935 F.2d 553, 564,
(3d Cir. 1991).  In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473
U.S. 479, 496 n. 14 (1985), the Supreme Court noted that RICO
does not contemplate "two isolated acts of racketeering
activity."  The Court quoted Senate Report language noting that
"'*continuity plus relationship* . . . combines to produce a
pattern.'" *Id.*  (quoting S. Rep. No. 91-617, p. 158 (1969)).
The High Court has since held that "RICO's legislative history
reveals Congress' intent that to prove a pattern of
racketeering activity a plaintiff or prosecutor must show that
the racketeering predicates are related, and that they amount
to or pose a threat to continued criminal activity." *H.J. Inc.
v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (3d Cir. 1989).

RICO acts satisfy the relatedness requirement of the RICO statute if they possess "the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and not isolated events." *Id.* at 240.  The Court of Appeals for the Third Circuit has counseled that a "very flexible" approach to the relatedness requirement is appropriate:

> [We] should avoid interpreting the relatedness requirement too narrowly . . . . In organized crime cases, where the RICO enterprise exists solely for criminal purposes, the necessary nexus between the predicate acts and the enterprise will often be enough to satisfy the relatedness requirements.

*Banks v. Wolk*, 918 F.2d 418 (3d Cir. 1990).

Indeed, notwithstanding, facial differences in predicate acts, courts have found relatedness where predicate acts were undertaken as part of the racketeering activity's way of doing business. *See*, *e.g., United States v. Eufrasio*, 935 F.3d 553, 565 (3d Cir. 1991)("Following *H.J. Inc.* and our own cases, we hold that when a proven organized crime entity . . . is the relevant criminal enterprise in a RICO case, the relationship prong of RICO's pattern requirement is satisfied by functionally unrelated predicate acts and offenses, if the predicates are undertaken in association with, or in furtherance of criminal purposes of the same organized criminal

enterprise."); *United States v. Pungitore*, 910 F.2d 1084, 1103 (3d Cir. 1990)(finding a pattern in seemingly unrelated acts, "as they were committed pursuant to the orders of key members of the enterprise in furtherance of its affairs"); *see also United States v. Basciano*, 599 F.3d 184, 202 (3d Cir. 2010)("At the highest level of generality, relatedness and continuity can be established simply by connecting diverse predicate acts to an enterprise 'whose business is racketeering activity,' such as an organized crime family.")

Mark highlights the linkages between the acts charging drug conspiracy and attempted murder in terms of methods used and victims.  He contrasts that with the dogfighting predicate act, asserting that "there was no evidence that the alleged dog fighting was conducted for the same or similar *purposes* as the alleged drug conspiracies or attempted murder or that it had the same or similar *results, victims, or methods of commission*." (Mark's Mot. for J. of Acquit. 10.)

However, the testimony of Glenson Isaac links the drug trafficking and dogfighting for bet activities.  On cross-examination, Isaac was questioned about the relationship between dogfighting and drug activities:

> Q: Mr. Isaac, you regard pit bull fighting as a sport, don't you?
> A: Yes.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 15

> Q: And it's more of a hobby, correct?
> A: Yes.
> Q: And you've been engaged in it for many years?
> A: Yes.
> Q: And it had nothing to do with the drug part of your life, did it?
> A: Yes.
> Q: Well, in what way -- is it because you just had some money?
> A: For betting that kind of --
> Q: I'm sorry?
> A: Okay. Repeat your question.
> Q: You had your dogfighting and breeding and raising hobby, correct.
> A: Uhm-hmm.
> Q: Then you had your drug stuff; is that correct?
> A: Yes.
> Q: All right.

(Trial Tr. at 201-02, May 5, 2010.)

The government probed further with regard to the enterprise's drug transactions and dogfighting on redirect:

> Q: Attorney Moore asked you whether drugs are related to dogs, and I think you said yes.  How is that?
>
> MR. HODGE: Objection.  Mischaracterizes the testimony.
>
> THE COURT: Overruled.
>
> A: To bet that large quantity of money at dogfights.

(*Id.* at 204-05.)  Isaac's testimony thus evinces a link between the enterprises drug trafficking profits and its dogfighting bets.

The Court further notes that the Mark-Blyden enterprise was similar to an organized crime RICO enterprise, whereby its prevailing purpose was to engage in racketeering activity.  On

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 16

this basis, its activities done in furtherance of the
enterprise could satisfy the enterprise requirement. *See, e.g.,*
*Pungitore,* 910 F.2d at 1104.  The Court concluded that the
dogfighting and drug trafficking acts were sufficiently related
to satisfy RICO's relatedness requirement.

### b) Continuity

In a RICO case, the government is further required to
prove that the racketeering acts "amount to or pose a threat of
continued criminal activity." *H.J. Inc.,* 492 U.S. at 239.
"Predicate acts extending over a few weeks or months and
threatening no future criminal conduct do not satisfy [RICO's]
continuity requirement . . . ." *Id.* at 242.

"'Continuity' is both a closed-and open-ended concept,
referring either to a closed period of repeated conduct, or to
past conduct that by its nature projects into the future with a
threat of repetition." *H.J. Inc.,* 492 U.S. at 241.

> For closed-ended continuity, a RICO plaintiff must
> allege a series of related predicates lasting a
> substantial period of time. For open-ended continuity,
> the plaintiff must allege a threat of continuity that
> exists when the predicate acts are a part of the
> defendant's regular way of doing business.

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.,*
87 Fed. Appx. 227,232-33 (3d Cir. 2003)(internal citations and
quotations omitted).  The Court of Appeals for the Third

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 17

Circuit has noted that "[w]hile declining to define with precision the meaning of a 'substantial period of time,' we have never found such a period to exist where the racketeering activity occurred over a period of one year or less." *United States v. Pelullo*, 964 F.2d 193, 209 (3d Cir. 1992).

Mark contends that the only predicate acts for which he was found guilty were a conspiracy to import cocaine - beginning no later than November 2004 and continuing until October 2005- and dogfighting, which he again argues was not linked to a discrete time period.  Mark thus suggests that the operative time frame for the alleged enterprise "lasted for months rather than for a year: from November 2004 through October 2005." (Mark's Mot. for J. of Acquit. 12.) Mark misstates the time frame, as the dogfighting predicate act was charged to have begun in 1999 and continued to 2005.

Moreover, even assuming *arguendo*, that the lifespan of the enterprise was a mere few months, the continuity requirement could be satisfied based on the threat of ongoing criminal activity presented by the Mark-Blyden enterprise.  In light of the enterprise's success in drug trafficking and dogfighting, crime could be fairly said to be the enterprise's "regular way of doing business." *H.J. Inc.*, 492 U.S. at 243.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 18

### ii. Count Three

Mark asserts that the offense charged in Count Three - the assault of Friday - was not done in furtherance of the conspiracy.  Specifically, he states that the assault was committed on May 24, 2004 and that "the conspiracy to possess with intent to distribute cocaine, *post-dated* that alleged assault by six months." (Mark's Mot. for J. of Acquit. 15.)

Mark's argument that the assault necessarily preceded the conspiracy to possess with intent to distribute cocaine is misplaced.  The conspiracy was one "beginning from a time unknown, but no later than November 2004 . . . ." (Superseding Indictment.)

Additionally, the testimony of the victim provided evidence of a link between the enterprises drug distribution efforts and the assault.  Friday offered testimony that Mark directed him to an individual, named Culture who sold Friday cocaine:

> A: He, he called Gelean, and then he gave me a quarter key.
> Q: What do you mean "a quarter key"
> A: Of cocaine.
> Q: A quarter of a kilo of cocaine; is that correct?
> A: Yes. Sir.
> Q: In what form was it?
> A: In powder form.
> Q: When you got that quarter of a key of cocaine, what did you do to it?

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 19

> A: I cook it up, and went in Smith Bay and
> started to hustle.
> Q: What do you mean you when you say hustling?
> A: Selling drugs, selling it.

(Trial Tr. at 20-21, May 4, 2010.)

Friday further testified that Blyden had suggested some collaboration in drug distribution:

> Q: What if anything, did Mr. Blyden say to you at
> that meeting?
> A: He say he heard that, he heard from a guy that
> I is a good dude to work for, I hustle in Smith
> Bay and stuff like that.  He would like to mess
> with you.
> Q: "He would like to mess with you"?
> A: Yeah.  He would like to work with me.
> Q: What was your understanding of "work with you
> mean"?
>                          . . . .
>
> A: He say he does get them things, too.  So it's
> only, one thing he could be talking about, and
> that's cocaine.
>                          . . . .
>
> Q: . . . [D]id you work with him?
> A: No.
> Q: Why didn't you work with him?
> A: Because I didn't need nothing from them.  I
> ain't really wanted nothing from him. I ain't
> wanted nothing to do with him.

(Trial Tr. at 24-25, May 4, 2010.)

Friday acknowledged that he sold drugs in the Smith Bay area.  The government presented evidence that the Mark-Blyden enterprise also distributed drugs in the Smith Bay area. Friday's presence on the enterprise's "turf," and his rejection

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 20

of Blyden's offer to join forces, supports the government's theory that the assault of Friday was motivated by a desire to eliminate competition in the Smith Bay area. A reasonable juror could thus find that Blyden committed the assault, at least in part, to increase his standing in the Mark-Blyden enterprise.

**2. Blyden's Rule 29 Motion**

**a. Count Three**

**i. The Inception of the Mark-Blyden Enterprise**

Blyden argues that there was insufficient evidence to convict him of the offense charged in Count Three. He argues that, in light of the jury's finding of predicate acts of the conspiracy to import cocaine and for bet encouraging dogs to attack, bite, and wound other dogs, the Mark-Blyden enterprise did not have sufficient predicate acts to exist until some six months after the May 24, 2004 assault of Friday. However, the government charged a conspiracy "beginning from a time unknown, but no later than November 2004." (Superseding Indictment.) As such, the conspiracy charged could have preceded the assault. Moreover, testimony from Friday that he had a conversation with Mark about drug operations in Smith Bay, prior to the assault, supports a finding that the conspiracy to import cocaine was in existence prior to May 24, 2004.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 21

### ii. Benefit to Blyden

Blyden further argues that the "Government failed to prove that the Defendant received anything from the enterprise in committing the assault . . . ."(Def. Blyden's Post-Trial Mot. for J. of Acquit. 7.)  18 U.S.C. § 1959 criminalizes committing a violent crime "as consideration for the receipt of, or as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity, *or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise . . . ."* 18 U.S.C. § 1959(a).  The government proceeded under the second prong of the statute -- that Blyden committed the assault on Nicholas in his capacity as "the enforcer" of the enterprise. As such, the failure to demonstrate a discrete pecuniary benefit to Blyden from the commission of the assault does not prevent his culpability as to Count Three.

## B. Rule 33

### 1. Mark's Rule 33 Motion

#### a.   Lack of Specificity of the Structure of the Enterprise in Instruction

Mark objects to the absence of a specific instruction about the organizational structure of the Mark-Blyden enterprise.  He notes that the Indictment charged that Mark was the "leader of

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 22

the enterprise who directed the other members and associates of

the enterprise in carrying out unlawful [sic] and other

activities in furtherance of the conduct of the enterprise's

affairs." (Superseding Indictment.)  RICO requires that the

government show : "'that the enterprise is an ongoing

organization with some sort of framework for making or carrying

out its decisions[.]'" *United States v. Irizarry*, 341 F.3d 273,

286 (3d Cir. 2003)(quoting *United States v. Pelullo*, 964 F.2d

193, 211 (3d Cir. 1992)).

Mark notes that the government alleged the existence of a

hierarchy, with Mark as the leader.  He thus asserts that the

jury instructions were deficient in failing to instruct the jury

about the hierarchy structure of the Mark-Blyden enterprise.

Mark argues that the Court's failure to provide a specific

structure instruction fostered confusion as between the Mark-

Blyden enterprise, and a drug organization helmed by witness,

James Springette.

Springette testified that his organization was involved in

"r[unning] drugs from Venezuela to the U.S. Virgin Islands on to

North Carolina . . . ." (Trial Tr. at 8, May 5, 2010).  Mark

argues that the jury instructions did not appropriately define

the Mark-Blyden enterprise, and thus permitted the jury to

convict Mark based on conduct that was done in furtherance of

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 23

the Springette organization.

The Court first notes that the jury charge included a standard instruction with respect to the requirement that the enterprise possess a framework for its decisions:

> In order to find the existence of an "association in fact enterprise," you must find that the government proved beyond a reasonable doubt each of the following:
>
> **FIRST:** That the group had a purpose and longevity sufficient for the members of the group to pursue its purpose
> **SECOND:** That the group had an ongoing organization, formal or informal, with some sort of framework for making or carrying out decisions;

(Jury Charge at 16.)

Springette offered testimony that Mark worked as a member of Springette's Venezuela-United States drug operation. Specifically, he stated that "[e]ach department of the drug trafficking has different people who would run certain structures for the organization.  For instance, in Venezuela I had a group of people who – . . . I would have a group of people who would work under me, and they would assist me.  In the Virgin Islands you would have another group of people who would work under, for instance, Kerwin[6]." (Trial Tr. at 26, May 5, 2010).  Though Springette's testimony established that Mark had a role in Springette's enterprise, the government's evidence at

---

[6]Gelean Mark is also known as Kerwin.

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 24

trial targeted the Mark-Blyden enterprise's operations on St.
Thomas and to a lesser extent in North Carolina.  The Court did
not find that a lack of a specific instruction about the
hierarchy of the Mark-Blyden enterprise confused the jury about
its structure.

### b. Prejudicial Evidence of Springette Drug Organization

Mark asserts that the allowance of testimony regarding the
Springette organization was prejudicial.

"All relevant evidence is admissible except as otherwise
provided, except as otherwise provided by the Constitution of
the United States, by Act of Congress, by these rules, or by
other rules prescribed by the Supreme Court pursuant to
statutory authority." FED. R. EVID. 401.  In fulfilling its gate-
keeping role the Court may exclude evidence "if its probative
value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or
by considerations of undue delay, waste of time, or needless
presentation of cumulative evidence." FED. R. EVID. 403.

The government's theory was that Mark's membership in the
Springette organization provided a gateway to securing the drugs
he trafficked in the operation of the Mark-Blyden enterprise.
Testimony about Springette's organization and Mark's involvement
with Springette's trafficking operations was relevant to proving

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 25

Mark's independent trafficking activity as part of the Mark-Blyden enterprise.

In *United States v. DiSalvo,* 34 F.3d 1204 (3d Cir. 1994), a defendant appealed his conviction for non-drug related RICO charges.  At trial, despite the defendant's objection, the court permitted evidence about the relationship between the defendant and a drug dealer.  The Court noted that such testimony helped establish the defendant's "knowing participation in and association with the RICO enterprise . . . essential elements of the RICO charges." *DiSalvo*, 34 F.3d at 1220.  Though the evidence challenged here involves a separate criminal organization, evidence of the Springette operation was probative of the structure of Mark's enterprise.  As such, the Court found no error with the admission of evidence about the Springette operation.

### c. Cockfighting

Mark objects to the presentation of testimony about cockfighting at trial.  Cockfighting is legal under Virgin Islands law.  He notes that the government's use of the term "gambling" in describing the acts of the enterprise may have confused the jury and caused the jury to believe that cockfighting represented racketeering activity.

Mark's argument is belied by the specific description of

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 26

racketeering act six as "for bet encouraging dogs to attack, bite, and wound other dogs."  Mark failed to establish error in the Court's admission of testimony about cockfighting.

### d. Dogfighting in the British Virgin Islands and North Carolina

Mark also challenges the presentation of evidence about his participation at dogfights in the British Virgin Islands and North Carolina.

During his testimony, Damien Daniels ("Daniels"), testified that he had attended a dog fight in the British Virgin Islands at which Mark's dog was a competitor (Trial Tr. at 201, May 3, 2010.).  The Court later decided to strike such testimony and issued the following instruction:

> [Y]ou may recall there was some discussion or some testimony received while Mr. Damien Daniel [sic] was testifying, and he referred to events taking place in the British Virgin Islands, specifically reference to a dogfight in the British Virgin islands.
> That reference to the dogfight occurring in the British Virgin Islands, you are instructed to disregard that.  That is not to be part of your consideration.

(Trial Tr. at 286, May 5, 2010.)

The Court finds that any prejudice occasioned by Daniel's reference to dogfighting in the British Virgin Islands was cured by the Court's instruction.

With respect to dogfighting in North Carolina, the Court

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 27

notes that "[e]vidence of uncharged crimes may be introduced even against a defendant without knowledge of such crimes, if the uncharged crimes are proof of some elements of the crimes actually charged against such defendant." *United States v. Eufrasio*, 935 F.2d 553, 572 (3d Cir. 1991). The evidence of Mark's involvement with dogfighting for bet in North Carolina was probative of his knowledge and involvement with the dogfighting business of the Mark-Blyden enterprise in the United States Virgin Islands. As such, the Court found no error with the admission of evidence of his dogfighting in North Carolina.

### e. Jury Instruction on Relatedness

Mark argues that there was no jury instruction on the need for relatedness between the racketeering acts. However, the jury charge clearly instructed the jury that in order to find that a defendant knowingly participated in the enterprise "through a pattern of racketeering activity," the racketeering acts must have been related to each other:

> **"THROUGH A PATTERN OF RACKETEERING ACTIVITY" DEFINED**
> The fifth element that the government must prove beyond a reasonable doubt for the offense charged in Count One is that the defendant knowingly conducted the enterprise's affairs or knowingly participated, directly or indirectly, in the conduct of the enterprise's affairs "through a pattern of racketeering activity."
> To establish this element, the government must prove each of the following beyond a reasonable doubt:
> **FIRST:** That the defendant committed at least

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 28

> two of the acts of racketeering activity alleged and that the last act of racketeering activity occurred within ten years after the commission of a previous act of racketeering activity;
>
> **SECOND:** That the acts of racketeering activity were related to each other, meaning that there was a relationship between or among the acts of racketeering activity;
>
> . . . .
>
> With respect to the second requirement, acts of racketeering activity are "related" if the acts had the same or similar purposes, results, participants, victims or methods of commission, or were otherwise interrelated by distinguishing characteristics. Acts of racketeering activity are not related if they are disconnected, sporadic, or widely separated and isolated acts.

(Jury Charge at 22-23.)  The Court found that the instructions extensively discussed relatedness as a requirement.  Mark failed to direct the Court to any additional language that would have more clearly conveyed the relatedness concept to the jury.

### f. Racketeering Acts One and Three

Mark asserts that the charged conspiracy to import and distribute cocaine, beginning from a time unknown, but no later than 1999, and continuing until October 2005, charged in act one, and the conspiracy, beginning from a time unknown, but no later than November 2004 and continuing until October 2005, to import cocaine, in act three "are virtually indistinguishable." (Mark's Mot. for New Trial 14.)

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 29

The Court of Appeals for the Third Circuit has adopted a "totality of the circumstances" test to evaluate whether charged conspiracies represent distinct offenses. *United States v. Rigas*, 605 F.3d 194, 213 (3d Cir. 2010).  A court must look at several factors, including: (1) the existence of a common goal among conspirators; (2) whether the agreement intended a continuous outcome which would not have continued without the ongoing involvement of the conspirators; (3) the degree of overlap between those involved in various transactions; (4) the locus criminis of the conspiracies; (5) the temporal overlap between the conspiracies; (6) overlapping participants, accounting for both indicted and unindicted individuals; (7) the overt acts alleged; and (8) the similarity of the  defendant's role in the alleged conspiracies. *Id.*

At trial, the government presented proof as to two conspiracies to import cocaine.  One conspiracy was a conspiracy to import cocaine from South America into North Carolina.  The route was from South America to Tortola, Tortola to St. Thomas and St. Thomas to North Carolina.  A second conspiracy was a conspiracy to import drugs from South America to St. Thomas.  The route used was from South America to Tortola and Tortola to St. Thomas.

The testimony established Springette's organization funneled

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 30

drugs from South America to Tortola.  In Tortola, Bob Hodge, an

alleged co-conspirator would aid in the transport of drugs into

St. Thomas.  A co-conspirator, Walter Ells would travel via

speedboat, ferrying the drugs to Robert Joseph and Springette's

cousin, Elton Turnbull. Some of those drugs remained in St.

Thomas for distribution on the island.  Intercepted phone calls

were presented at trial of conversations involving Vernon Fagan

and Allen Dinzey related to the distribution of drugs on St.

Thomas.

     Some of the drugs were transported from the Virgin Islands

to North Carolina.  Springette testified that Mark oversaw

transporting drugs through the airport in St. Thomas to North

Carolina.  There was testimony that Turnbull and Isaac received

the drugs in North Carolina and oversaw their distribution there.

     The overlapping time frames and shared location of the

Virgin Islands, and select overlapping participants suggest a

similarity between the conspiracies.  Notwithstanding these

shared features, the Court finds significant the distinct aims of

the conspiracies: (1) importing cocaine into St. Thomas for

distribution via a street-level operation; (2) importing cocaine

for distribution into the continental United States.

     In a separate criminal proceeding, the Court of Appeals for

the Third Circuit addressed a similar argument from Mark in

relation to an Indictment charging him for conspiracy to possess
and distribute cocaine, cocaine base, and marijuana and a
conspiracy to import cocaine and cocaine base ("Redball I").  He
challenged on double jeopardy grounds, the subsequent prosecution
of an alleged conspiracy to possess and distribute and conspiracy
to import cocaine ("Redball II").  This Court denied a motion by
Mark to dismiss the Redball II indictment on double jeopardy
grounds.

He appealed that denial to the Third Circuit.  There, the
Third Circuit found the different aims of the conspiracies
significant:

> [T]he substantive objectives of the two conspiracies .
> . . [we]re distinct and reveal two agreements.
> Redball I alleged a conspiracy involving a street-level
> operation in St. Thomas distributing cocaine, crack
> cocaine, and marijuana, while Redball II alleged a
> conspiracy to import cocaine from the British Virgin
> Islands for subsequent distribution in the continental
> United States.

*United States v. Mark*, 284 Fed. Appx. 946, 949 (3d Cir.
2008)(unreported).  Here, the different objectives of the South
America-St.Thomas and South America-North Carolina conspiracies
similarly support a view of those conspiracies as distinct.

### g. Self-Defense Instruction

Mark further challenges the manner in which the Court
delivered his requested self-defense instruction.  The Court read

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 32

the lion's share of the jury charge prior to the parties' closing arguments.  After a break, the Court gave a few other instructions, among them a self-defense instruction.  Mark notes that because the self-defense instruction was read without relation to a specific count, the jury may have been confused as to which counts the self-defense instruction was applicable.

The Court found no prejudice with not explicitly linking the self-defense instruction to the assault count.  Moreover, the Court notes that an expansive approach to the self-defense instruction was arguably to Mark's benefit, as the jury could have read it as applying to other counts charged.

## 2. Blyden's Rule 33 Motion

### a. Voir Dire Questions

Blyden objects to the Court's failure to voir dire the jury concerning their sentiments about firearms, drugs, and cockfighting.

The Court questioned jurors about their ability to be fair and impartial and follow the Court's instructions on the law.  The Court found no error with its determination to forego Blyden's voir dire questions.

### b. Requested Jury Instructions

Blyden objects to the Court's rejection of his proposed jury instructions as to: (1) paid informants, (2) immunized witnesses,

*United States v. Mark et al.*
Criminal No. 2009-20
Memorandum Opinion
Page 33

(3) co-conspirators, and (4) accomplice testimony.  A new trial

is appropriate as a result of a Court's failure to give a

specific jury instruction "only when the requested instruction

was correct, not substantially covered by the instructions given,

and was so consequential that the refusal to give the instruction

was prejudicial to the defendant." *United States v. Hoffecker*,

530 F.3d 137, 167 (3d Cir. 2008)(internal citations and

quotations omitted).  The Court found that the instructions it

delivered about adjudging the credibility of witnesses, including

an instruction on weighing the credibility of cooperating

witnesses cover many of the issues in Blyden's requested

instructions.  The Court thus found no error in its refusal to

give the jury those instructions.

### c. Court Contact with Jury

During polling of the jury, a juror responded both "Yes and

no"  to the question asking whether the verdict represented his

unanimous verdict.  Following that juror's equivocation, the

Court ordered the jurors to resume deliberation.

Given that the polling revealed jury information to the

public in a highly publicized trial, the Court found it to be a

particularly important time to safeguard against improper contact

between jurors and members of the public.  To minimize that

possibility, the Court considered sequestering the jury.

*United States v. Mark et al.*
Criminal No. 200-20
Memorandum Opinion
Page 34

     To assess whether that option presented undue hardship,
questionnaires were submitted to jurors to determine whether
sequestration was feasible.  Blyden claims that the Court's
efforts amounted to improper contact with the jury, which he
suggests resulted in some prejudice to his case.

     The Court in no way engaged in any communication about the
merits of the case or any substantive discussion about their
deliberations.  Rather, the communication was strictly limited to
information regarding the Court's assessment of the feasibility
of sequestration.  The Court found no error with such
communication in these circumstances.


## IV. <u>CONCLUSION</u>

     For the foregoing reason, Mark's motions for judgment of
acquittal and a new trial were denied, as were Blyden's motions
for judgment of acquittal and a new trial.


                              S_____
                                   **CURTIS V. GÓMEZ**
                                    **Chief Judge**